United States District Court
Southern District of Texas
**ENTERED**
October 05, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRENADETTE SILVA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00301 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Plaintiff Brenadette Silva brought this action on December 19, 2021, seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1). On June 13, 2022, Plaintiff filed a Motion for Summary Judgment. (D.E. 14 and D.E. 15). On July 15, 2022, Defendant filed a Response, construed as a Cross Motion for Summary Judgment. (D.E. 16). For the reasons below, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

**I.     JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II.      STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment

meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's residual functional capacity ("RFC"), claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## III.   ISSUES PRESENTED

Plaintiff alleges the administrative law judge ("ALJ") (1) failed to develop the record as to Plaintiff's mental impairments and (2) failed to incorporate all limitations into the RFC without explanation. Plaintiff further asserts (3) remand is required because the ALJ and the Appeals Council had no legal authority to adjudicate this case because they were not properly appointed.

## IV.   PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on July 25, 2019 at age 49, alleging disability as of July 1, 2019, due to fibromyalgia, migraines, anxiety, dysphagia, asthma, chronic kidney disease, cellulitis, May Thurner syndrome and hypertension. (D.E. 12-3, Page 15; D.E. 12-4, Pages 6-8; D.E. 12-5, Page 2; D.E.12-9, Page 6). Plaintiff reported she stopped working on July 1, 2019. (D.E. 12-9, Page 7). After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an ALJ on January 13, 2021, at which Plaintiff, who was represented by counsel,

and a vocational expert ("VE") testified.  (D.E. 12-5, Pages 2-11 and 25-34; D.E. 12-4; D.E. 12-6, Pages 32-34).  The ALJ issued an unfavorable decision on March 12, 2021, finding Plaintiff not disabled from July 1, 2019, the alleged onset date, through the date of the decision.  (D.E. 12-3, Pages 15-32).

The Appeals Council declined Plaintiff's request for review on October 19, 2021, making the ALJ's March 12, 2021 decision final.  (D.E. 12-3, Pages 2-4 and D.E. 12-6, Page 20).  Plaintiff then filed this action on December 19, 2021, seeking review of the Commissioner's final decision.  (D.E. 1).

## V.     THE ALJ'S DECISION

On March 12, 2021, the ALJ issued a decision determining Plaintiff was not disabled from July 1, 2019 through the date of the decision.  (D.E. 12-3, Page 32). Specifically, the ALJ noted Plaintiff had engaged in substantial gainful activity in both the fourth quarter of 2019 and the first quarter of 2020.  (D.E. 12-3, Pages 18 and 25).[1] Acknowledging  Plaintiff's hearing testimony that while her employer had paid her during this time, she did not work frequently because of COVID-19 restrictions, several bladder infections and contracting COVID-19 in June 2020 which caused bilateral pneumonia, the ALJ noted her leave-and-earning statements did not support this assertion as they did not indicate an excessive number of absent days and "relatively few days of paid" sick and bereavement leave.  (D.E. 12-3, Pages 18 and 25).  The ALJ further noted Plaintiff's employer stated on February 10, 2021, that Plaintiff had only missed "days here and there

---

[1]Plaintiff earned $27,477.57 in 2017, $27,752.73 in 2018 and $27,722.53 in 2019.  (D.E. 12-8, Pages 16 and 19).

due to illness and due to a death in her family." (D.E. 12-3, Pages 18 and 25). Therefore, the ALJ addressed the issue of Plaintiff's disability from April 2020 through the date of the decision. (D.E. 12-3, Page 19).

Determining Plaintiff had the severe impairments of May Thurner Syndrome, fibromyalgia, polyarthritis and obesity, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (D.E. 12-3, Page 22). The ALJ determined the following ailments were not severe based on the record: hypertensive kidney disease, migraines, obstructive sleep apnea, gastroesophageal reflux disease, asthma, COVID-19 virus infection, depression and anxiety. (D.E. 12-3, Page 19). The ALJ reviewed Plaintiff's mental disorders and found the medical evidence did not establish that those conditions resulted in more than minimal limitations. (D.E. 12-3, Pages 20-22). Considering her reported daily activities, including living alone, caring for herself independently, driving, performing household chores, walking the length of a football field to get her mail, preparing her own meals, going out alone walking, going out alone driving and shopping, managing her own money, reading and watching television, the ALJ found her reported activities were not consistent with her reported functional limitations. (D.E. 12-3, Pages 20-21 and 25). The ALJ further noted that her depression and anxiety were noted as under "reasonably good control" with medications and psychiatric examinations in October 2019, May 2020 and June 2020 noted Plaintiff as cooperative, alert and oriented with clear speech and good eye contact, with normal mood and affect, normal attention span and concentration and oriented to time,

place and person. (D.E. 12-3, Page 21). Reviewing her function report, the ALJ also noted Plaintiff denied having any problems getting along with others, reported always getting along with authority figures, reported spending time with her children on a regular basis, reported having a good ability to following written and spoken instructions and finishing what she started. (D.E. 12-3, Page 21). The ALJ also considered the opinions of two state agency medical consultants who opined in September 2019 and February 2020 that Plaintiff had only mild restrictions based on her mental impairments. (D.E. 12-3, Page 21). The ALJ also noted Plaintiff testified in January 2021 that she had been looking for other jobs online and she was currently receiving unemployment compensation having submitted an affidavit stating she was able to work. (D.E. 12-3, Page 25).

After considering the entire record, including Plaintiff's reported mental impairments of depression and anxiety, the ALJ concluded Plaintiff had the RFC to perform limited range of light work because she could never climb ladders, ropes or scaffolds, and could only occasionally stoop, crouch, balance, kneel, crawl and climb ramps and stairs. (D.E. 12-3, Pages 23-24). Therefore, the ALJ determined based on the record, including the VE's testimony, that Plaintiff was capable of performing her past relevant work as a medical laboratory technician as generally performed and invoice clerk and was not under a disability from July 1, 2019 through the date of the decision. (D.E. 12-3, Pages 29-32 and D.E. 12-9, Pages 36-43).

# VI.    ANALYSIS[2]

Plaintiff alleges the ALJ's RFC is not supported by substantial evidence in the record as to her mental limitations because the ALJ relied on the opinions of state agency medical consultants who rendered their opinions over a year prior to the ALJ's decision and there is no evidence these consultants specialized in mental impairments as they did not enter corresponding medical specialty codes.  Accordingly, Plaintiff asserts the ALJ failed to develop the record by obtaining an updated medical opinion regarding Plaintiff's mental functioning "[b]ecause her mental condition obviously deteriorated around June 1, 2020 [and] any medical opinion which pre-dated that time could not fairly reflect [her] mental limitations because there was little to no evidence of her mental impairment at that time."  (D.E. 15, Page 6).  Plaintiff asserts the ALJ simply expressed his own lay opinion about the medical evidence related to Plaintiff's mental impairments and is not permitted to do so.  Plaintiff further argues the ALJ failed to incorporate any limitations in the RFC related to her mental impairments.

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citation omitted). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002) (The ALJ, who made numerous inquiries regarding Plaintiff's medical condition and

---

[2] The undersigned's citation to the medical evidence in this memorandum and recommendation is not intended to be and exhaustive summary of the record, but rather is limited to evidence most relevant to the Court's analysis. In addition to the evidence cited by the parties, the undersigned has reviewed and considered the entire medial record.

employment history and also inquired as to whether Plaintiff desired to present additional evidence, did not fail to develop the record by not ordering a consultative examination and a consultative examination was not necessary to enable the ALJ to make a disability determination).  The burden of proof lies with the Plaintiff to prove disability under the first four steps of the five-step inquiry.  *Leggett*, 67 F.3d at 564.  Further, the Fifth Circuit has held the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. *Ripley v. Charter,* 67 F.3d 552, 557 (5th Cir. 1995).  Instead, the issue is whether substantial evidence exists in the record to support the ALJ's decision.  *Id*.  To be substantial, such evidence must establish the effect claimant's ailments had on that claimant's ability to work.  *Id*.

The ALJ satisfied the duty to develop the record by thoroughly reviewing the medical records from Plaintiff's treating physicians regarding any limitations, the VE's testimony, Plaintiff's testimony and Function Report as well as the reports of two state agency medical consultants.  The administrative record contained sufficient evidence for the ALJ to determine Plaintiff was not disabled and there was no inconsistency between the medical evidence necessitating further examinations.  The ALJ properly evaluated Plaintiff's impairments and the completeness of the record before determining Plaintiff's RFC.  (D.E. 12-3, Pages 19-29).[3]  The undersigned finds no crucial issues that were

---

[3]Because Plaintiff filed her application for disability benefits on July 25, 2019, the new rule applies which provides the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a).  Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2).

underdeveloped or any reason to believe the medical records before the ALJ were insufficient or inconsistent.  The ALJ fully and fairly developed the record and had no obligation to order any additional clarifying statements, consultative examinations or additional testing.

Reviewing the record, it supports the ALJ's determination that Plaintiff had mild mental ailments which were controlled by medication.[4]  The ALJ reviewed Plaintiff's mental disorders and found the medical evidence did not establish that those conditions resulted in more than minimal limitations and, accordingly, that her depression and anxiety were non-severe impairments which did not interfere with Plaintiff's ability to work.  (D.E. 12-3, Pages 20-22).  Further, throughout the entire time period at issue, Plaintiff was consistently noted as in no acute distress, pleasant, alert, oriented, cooperative, having normal cognitive function, normal affect, maintaining good eye contact, having clear speech, having good insight and judgment and logical thought processes while being treated by various medical professionals.  (D.E. 12-15, Pages 30-31 and 34; D.E. 12-16,

---

[4]On July 6, 2017, Plaintiff was found to have mild depression although subsequent depression screenings in November 2017, April 2019 and June 2019 were negative. (D.E. 12-16, Page 12; D.E. 12-17, Pages 13-14, 53 and 99).  In April 2019, Plaintiff was prescribed Cymbalta for fibromyalgia pain and it was noted that Plaintiff "has some anxiety issues as well and [Cymbalta] may help with these symptoms."  (D.E. 12-17, Page 18).  On October 25, 2019, Plaintiff was assessed as having "major depressive disorder, single episode, moderate" but is noted later that month and in November as having "[n]o depression, no anxiety, no agitation." (D.E. 12-18, Pages 22-24, 26, 63, 70-71 and D.E. 12-19, Pages 26-27).  In January 2020, Plaintiff was noted as having major depressive disorder recurrent mild.  (D.E. 12-20, Page 57).  Plaintiff was noted as having an adjustment disorder with anxiety in February 2020.  (D.E. 12-20, Page 53).  The next month and in May 2020, Plaintiff was assessed as having major depressive disorder recurrent mild.  (D.E. 12-20, Pages 46 and 39-40).  Later in May 2020, Plaintiff was noted as having "[a]nxiety associated with depression."  (D.E. 12-19, Page 13).  In June 2020, Plaintiff reported she had increased depression and anxiety and her anxiety medication was increased.  (D.E. 12-20, Page 31).  While being treated for COVID later that month and in July 2020, Plaintiff denied having any psychiatric symptoms.  (D.E. 12-20, Pages 12, 16, 21, 25, 29 and 70).  Plaintiff was assessed as having an anxiety disorder in August 2020 and her medications were adjusted to something more affordable.  (D.E. 12-20, Pages 7-8).  According to her former employer, Plaintiff worked as an office administrator from July 15, 2019 through June 11, 2020.  (D.E. 12-10, Page 2).

Pages 11 and 23; D.E. 12-17, Pages 5, 7-9, 11, 17, 20-21, 23-24, 31-40, 46-50, 53-54, 84 and 102; D.E. 12-18, Pages 12-13, 26, 63 and 70-71; D.E. 12-19, Pages 13 and 26-27; D.E. 12-20, Pages 35, 39, 43, 46, 48-49, 53, 57 and 71).

Considering her reported daily activities, including living alone, caring for herself independently, driving, performing household chores, walking the length of a football field to get her mail, preparing her own meals, going out alone walking, going out alone driving and shopping, managing her own money, reading and watching television, the ALJ found her reported activities were not consistent with her reported functional limitations and appropriately found Plaintiff's statements regarding the severity of her limitations were not entirely credible.  (D.E. 12-3, Pages 20-21 and 25).  Reviewing her function report, the ALJ also noted Plaintiff denied having any problems getting along with others, reported always getting along with authority figures, reported spending time with her children on a regular basis, reported having a good ability to following written and spoken instructions and finishing what she started.  (D.E. 12-3, Page 21).  The ALJ also considered the opinions of two state agency medical consultants who opined in September 2019 and February 2020 that Plaintiff had only mild restrictions based on her mental impairments.  (D.E. 12-3, Page 21).[5]

The ALJ further noted that while Plaintiff alleged disability beginning July 2019, she worked until June 2020 and her leave and earnings statements did not indicate an

---

[5]The undersigned recommends Plaintiff's argument that these consultants were not qualified because they did not list corresponding medical specialty codes to be without merit and Defendant's response to this argument is well supported.  Both consultants are qualified psychologists. (D.E. 16, Pages 7-8).

excessive number of absent days as she had testified at the hearing.  (D.E. 12-3, Page 35; D.E. 12-10, Page 2; and D.E. 12-10 to D.E. 12-13).  Additionally, the ALJ noted Plaintiff testified she had been looking for other jobs online and that at the time of the hearing in January 2021, Plaintiff had also testified she was receiving unemployment compensation having submitted an affidavit stating she was ready, willing and able to work.  (D.E. 12-3, Page 25 and D.E. 12-4, Pages 11-13).

All of Plaintiff's ailments and resulting limitations are discussed throughout Plaintiff's treatment records.  The ALJ, who questioned the Plaintiff at length, also thoroughly reviewed her treatment records and was not required to order additional and/or clarifying consultative examinations or additional medical testimony in order to make a disability determination in this case.  The ALJ possessed evidence to fully and fairly develop the record, noting the inconsistencies between Plaintiff's testimony and reported limitations and the medical reports obtained reflecting her abilities.  The ALJ appropriately considered the additional evidence in the record received after the state agency medical consultants rendered their opinions, including Plaintiff's additional medical records and hearing testimony, limiting Plaintiff to a modified range of light work.  The undersigned recommends substantial evidence supports the ALJ's decision that Plaintiff had the RFC to perform her past relevant work as a medical laboratory technician as generally performed and invoice clerk.  *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject [the claimant's] argument that because the record was devoid of [an RFC] assessment by a medical source, the ALJ was not competent to assess her RFC.  It is the

ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.")

Further, even if an extended or additional consultative examination was necessary, to obtain a remand for an ALJ's failure to develop the record, Plaintiff must demonstrate she was prejudiced by the deficiencies she alleges. *Brock*, 84 F.3d at 728 (explaining Plaintiff "must show that he could and would have adduced evidence that might have altered the result") (citation omitted); *Gonzalez*, 51 F. App'x at 484 (Even if a consultative examination was necessary, Plaintiff must make a sufficient showing of prejudice which she has not done because she "has failed to present any evidence or argument showing [her ailments] affected her ability to perform her past relevant work.") Such prejudice "can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n. 22 (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)).

Here, Plaintiff has failed to make a sufficient showing of prejudice and points to no new sufficient evidence that, had the ALJ developed the record further, would have been offered at the hearing and changed the result. Plaintiff offers only a supposition that her anxiety increased in June 2020 and that additional medical evidence, such as a consultative examination, "could have definitely determined what mental limitations [she] was experiencing since exacerbation of her mental health symptoms and loss of insurance benefits in June 2020." (D.E. 15, page 9). However, the record indicates Plaintiff's mental

ailments were controlled by medication throughout the entire time at issue, as discussed above, and that she worked until June 2020 with these mental conditions.  (D.E. 12-10, Page 2).  Further, Plaintiff ignores the records that while being treated for COVID in June and July 2020, she consistently denied having any neurological or psychiatric symptoms and while her anxiety medication was refilled during this time, her mood and affect were noted as appropriate.  (D.E. 12-20, Pages 12, 16, 21, 25, 29 and 71).  Additionally, in August 2020, Plaintiff's depression medication was changed to something more affordable. (D.E. 12-20, Pages 7-8).  Nowhere in the record does it indicate that her "mental condition obviously deteriorated around June 1, 2020" as Plaintiff now asserts.  (D.E. 15, Page 6). Rather, the record shows Plaintiff's mental ailments were controlled with medications.  The ALJ conducted a review of the entire record, including Plaintiff's own testimony regarding her limitations, and used this information when determining Plaintiff's RFC.  The ALJ did not have a duty to request further or clarifying consultative examinations when the record already contained substantial evidence upon which to make a determination as discussed above. Nor was the ALJ required to incorporate mental limitations into the RFC having determined Plaintiff's mental impairments were non-severe and the record indicates they did not impair her ability to work during the time at issue.

Finally, Plaintiff argues that former Acting Commissioner Nancy Berryhill was without power to appoint the ALJ or the Appeals Council who adjudicated her case because her tenure under the Federal Vacancies Reform Act ("FVRA") had expired when she

ratified their appointments.  The FVRA, 5 U.S.C. § 3346, imposes time limits on those

"serving as an acting officer" and provides, in relevant part, as follows:

(a) Except in the case of a vacancy caused by sickness, the person serving as an acting
officer as described under section 3345 may serve in the office--

> (1)     for no longer than 210 days beginning on the date the vacancy occurs;
>         or
>
> (2)     subject to subsection (b), once a first or second nomination for the
>         office is submitted to the Senate, from the date of such nomination for
>         the period that the nomination is pending in the Senate.

(b)(1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned
to the President by the Senate, the person may continue to serve as the acting officer for no
more than 210 days after the date of such rejection, withdrawal, or return.

Ms. Berryhill was designated as Acting Commissioner on January 21, 2017 and

served 210 days until November 16, 2017.  *Williams v. Kijakazi*, No. 1:21-cv-141-GCM,

2022 WL 2163008, at * 2 (W.D. N.C. June 15, 2022).  During these 210 days, President

Trump did not nominate an SSA Commissioner.  On March 6, 2018, Ms. Berryhill

temporarily stepped down as Acting Commissioner.  *See* Letter from Thomas H.

Armstrong, U.S. Gov't Accountability Off. Gen. Couns., to Donald Trump, U.S. President

(March 6, 2018), https://www.gao.gov/assets/b-329853.pdf (Reporting Ms. Berryhill's

initial service as Acting Commissioner extended beyond the time allowed under the

FVRA). On April 17, 2018, after President Trump nominated Andrew Saul as the

Commissioner of Social Security, Ms. Berryhill resumed her role as Acting Commissioner

pursuant to 5 U.S.C. § 3346(a)(2) until Mr. Saul was sworn in as Commissioner.  *Id*.  On

July 16, 2018, Acting Commissioner Berryhill ratified the appointments of all SSA ALJs

and approved them as her own.  *Id*.

14 / 18

Plaintiff asserts Ms. Berryhill as Acting Commissioner had the authority to appoint ALJs and Appeals Council judges under the Federal Vacancies Reform Act ("FVRA") only during the first 210 days in that role and even though she served for much longer, her authority as Acting Commissioner ended before she appointed the ALJ in this case.  (D.E. 15, Pages 13-14).  In support, Plaintiff relies on two recent District of Minnesota cases asserting she "offers the exact same arguments here as the claimants in those cases."  (D.E. 15, Page 14); *Brian T.D. v. Kijakazi*, 580 F.Supp.3d 615 (D. Minn. 2022), *appeal pending* No. 22-1601 (8th Cir. Mar. 22, 2022); *Richard J.M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914 (D. Minn. Mar. 30, 2022), *appeal pending* No. 22-2127 (8th Cir. May 27, 2022).  These Courts concluded that the ALJs in those cases lacked authority to hear and render decisions, remanding both cases, reasoning Ms. Berryhill was not properly acting as Commissioner under the FVRA when she purportedly ratified the ALJs appointments during her second tenure as Acting Commissioner.  *Id.* (Concluding that because the initial 210-day acting service period lapsed before the submission of Mr. Saul's nomination, Ms. Berryhill could not serve as Acting Commissioner during the pendency of his nomination and therefore, she could not lawfully ratify and approve ALJ appointments in 2018).  Accordingly, Plaintiff asserts this case must also be remanded for consideration by a properly appointed ALJ.

The undersigned recommends, as have the majority of other courts, that "the plain language of the statute authorizes acting service in two instances:  during the initial 210 days after a vacancy is created, and while a nomination is pending."  *Bauer v. Kijakazi*,

No. 21-cv-2008-KEM, 2022 WL 2918918, at *8 (N. D. Iowa July 5, 2022) (Finding the disjunctive "or" instead of the word "either" in the statute allows one individual to serve during both of the periods set out in § 3346(a)). The cases relied upon by Plaintiff "conflict[] with the plain text of the FVRA, nearly every other court to address the issue, as well as the views of the Executive Branch and Legislative Branch, all of which agree that § 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired." *Williams*, 2022 WL 2163008, at * 3 (Finding the use of the word "or" in the statute allows for acting service during either or both of two periods: (1) for 210 days after the vacancy or (2) during the pendency of a first or second nomination). Therefore, "under§ 3346(a)(2)'s plain text, 'once' Mr. Saul's 'nomination for the office' of Commissioner '[wa]s submitted to the Senate,' Ms. Berryhill could serve 'for the period that the nomination [wa]s pending in the Senate.'" *Id.* (Finding the legislative history, the views of the Executive and Legislative branches, and the "great majority of courts that have addressed this issue agree that § 3346(a)(2) 'contains a spring back provision that enabled Ms. Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner" in April 2018) (Listing opinions). Therefore, the undersigned recommends Ms. Berryhill had the statutory authority to ratify all appointments in 2018 and Plaintiff's argument is without merit.

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 14), the Commissioner's Motion for Summary Judgment be **GRANTED** (D.E. 16) and this case be **DISMISSED**.

Respectfully submitted on October 5, 2022.

Jason B. Libby
United States Magistrate Judge

17 / 18

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).